Slip Op. 18-152

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **THUAN AN PRODUCTION TRADING AND SERVICE CO., LTD. and GOLDEN QUALITY SEAFOOD CORPORATION,** | |
| **Plaintiff and Consolidated Plaintiff,** | |
| **v.** | **Before: Claire R. Kelly, Judge** |
| **UNITED STATES,** | **Consol. Court No. 17-00056** |
| **Defendant.** | |
| **and** | |
| **CATFISH FARMERS OF AMERICA ET AL.,** | |
| **Defendant-Intervenors and Consolidated Defendant Intervenors.** | |

## OPINION

[Remanding Commerce's use of a country-wide NME antidumping rate, remanding Commerce's application of the NME rate to Plaintiff, and sustaining Commerce's requirement of CONNUM-specific FOP reporting.]

Dated: November 5, 2018

Matthew Jon McConkey, Mayer Brown LLP, of Washington, DC, for plaintiff Thuan An Production Trading and Service Co., Ltd.

Andrew Brehm Schroth, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of Hong Kong, S.A.R., and Jordan Charles Kahn, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of Washington, DC, for consolidated plaintiff Golden Quality Seafood Corporation.

Kara Marie Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of Counsel was Kristen McCannon, Attorney, Office of

the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Jonathan Mario Zielinski, Cassidy Levy Kent (USA) LLP, of Washington, DC, for defendant-intervenors and consolidated defendant-intervenors Catfish Farmers of America; America's Catch; Alabama Catfish Inc.; Consolidated Catfish Companies LLC; Delta Pride Catfish, Inc.; Guidry's Catfish, Inc.; Heartland Catfish Company; Magnolia Processing, Inc.; Simmons Farm Raised Catfish, Inc.

Kelly, Judge:  This action is before the court on a motion for judgment on the agency record.  See Thuan An Production Trading and Service Co., Ltd.'s R. 56.2 Mot. J. Agency R., Nov. 16, 2017, ECF No. 42; Consol. Pl. Golden Quality Seafood Corp.'s Mot. J. Agency R., Nov. 16, 2017, ECF No. 41.  Plaintiff and Consolidated Plaintiff challenge various aspects of the U.S. Department of Commerce's ("Department" or "Commerce") final determination in the twelfth administrative review of the antidumping duty ("ADD") order covering certain frozen fish fillets from the Socialist Republic of Vietnam ("Vietnam").  See Certain Frozen Fish Fillets from [Vietnam], 82 Fed. Reg. 15,181 (Dep't Commerce Mar. 27, 2017) (final results and partial rescission of [ADD] administrative review; 2014–2015) ("Final Results"), and accompanying Certain Frozen Fish Fillets from [Vietnam]: Issues and Decision Memorandum for the Final Results of the Twelfth [ADD] Administrative Review; 2014–2015, A-552-801, (Mar. 20, 2017), ECF No. 25-2 ("Final Decision Memo"); see also Certain Frozen Fish Fillets From [Vietnam], 68 Fed. Reg. 47,909 (Dep't Commerce Aug. 12, 2003) (notice of [ADD] order) ("ADD Order").

Plaintiff, Thuan An Production Trading and Service Co., Ltd. ("Tafishco"), and Consolidated Plaintiff, Golden Quality Seafood Corporation ("Golden Quality"), commenced separate actions pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of

1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012), which were later consolidated.[1]

See Summons, Mar. 31, 2017, ECF No. 1; Compl., Apr. 5, 2017, ECF 8; Order, July 26,

2017, ECF No. 28 (consolidating Court No. 17-00056, Court No. 17-00087, and Court No.

17-00088 under Court No. 17-00056).[2]   Tafishco and Golden Quality challenge several

aspects of Commerce's final determination as not supported by substantial evidence or

otherwise not in accordance with law.   See Mem. Law Supp. Pl.[']s Rule 56.2 Mot. J.

Agency R. at 1, 3–12, Nov. 16, 2017, ECF No. 42 ("Tafishco Br."); Mem. Law Supp.

Consol. Pl. Golden Quality Seafood Corp.'s Mot. J. Agency R. at 1, 8–20, Nov. 16, 2017,

ECF No. 41 ("Golden Quality Br."); see also 19 U.S.C. § 1516a(b)(1)(B)(i).   First, Tafishco

contends that Commerce lacks statutory authority to issue the Vietnam-wide non market

economy ("NME") rate in the twelfth administrative review.   See Tafishco Br. at 3–7.

Second, Tafishco argues that Commerce's assignment of a $2.39 per kilogram ("kg") rate

on the Vietnam-wide entity, and thus Tafishco, is not supported by substantial evidence.

See Tafishco Br. at 7–12.   Third, Golden Quality argues that Commerce erred by requiring

that it report its factors of production ("FOP") on a CONNUM-specific basis.   See Golden

Quality Br. at 7–20.   For the reasons set forth below, the court remands Commerce's

asserted legal grounds to issue the Vietnam-wide NME rate in this review, remands

Commerce's assignment of a $2.39 per kg rate to Tafishco, and sustains Commerce's

requirement that Golden Quality report its FOPs on a CONNUM-specific basis.

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

[2] Court No. 17-00087 was later severed and stayed.   See Memorandum and Order, Nov. 14, 2017, ECF No. 27.

## BACKGROUND

On June 16, 2003, Commerce found that certain frozen fish fillets from Vietnam were being, or were likely to be, sold in the United States at less than fair value ("LTFV"). See Certain Frozen Fish Fillets from [Vietnam], 68 Fed. Reg. 37,116 (Dep't Commerce June 23, 2003) (notice of final [ADD] determination of sales at [LTFV] and affirmative critical circumstances) and accompanying Issues and Decision Memorandum for the Antidumping Duty Investigation of Certain Frozen Fish Fillets from [Vietnam], A-552-801, (June 16, 2003), available at http://ia.ita.doc.gov/frn/summary/vietnam/03-15794-1.pdf (last visited Oct. 31, 2018).  Each year during the anniversary month of the publication of an ADD duty order, interested parties may request that Commerce conduct an administrative review of that order.  See 19 C.F.R. § 351.213; see also 19 U.S.C. § 1677 (for definition of interested parties).  On October 6, 2015, pursuant to a request from the petitioners, The Catfish Farmers of America and individual U.S. catfish processors, Commerce initiated the twelfth administrative review of the ADD order covering certain frozen fish fillets from Vietnam, for which the period of review was August, 1, 2014 through July, 31, 2015.  See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 80 Fed. Reg. 60,356, 60,358 (Dep't Commerce Oct. 6, 2015).

On March 3, 2016, pursuant to its authority under 19 U.S.C. § 1677f-1(c)(2),[3] Commerce selected Tafishco and Golden Quality as mandatory respondents for the

---

[3] In both reviews and investigations, 19 U.S.C. § 1677f-1(c)(2) provides Commerce with alternative methodologies for determining dumping margins where it is not practicable for Commerce to individually examine every producer or exporter because of the large number of

(footnote continued)

review.  See Certain Frozen Fish Fillets from [Vietnam]: Selection of Respondents for

Individual Review at 1–2, 7, PD 88, bar code 3446449-01 (Mar. 3, 2016).[4]  On March 22,

2016, Commerce issued ADD questionnaires to both parties.[5]  See Initial Questionnaire

to Tafishco, PD 90, bar code 3451250-01 (Mar. 22, 2016); Initial Questionnaire to Golden

Quality, PD 89, bar code 3451246-01 (Mar. 22, 2016).  In its questionnaires, Commerce

requested that the mandatory respondents report their FOPs[6] on a control-number

---

[4] On June 22, 2017, Defendant submitted an index to the public administrative records, which can be found at ECF No. 25. See Administrative Record, June 22, 2017, ECF No. 25. All further references to documents from the administrative records are identified by the numbers assigned by Commerce in these administrative records.

entities involved. The statute permits Commerce to examine, instead of every producer or exporter, either a statistically valid sample of producers and exporters, or the exporters and producers that account for the largest volume of subject merchandise from the country in question "that can be reasonably examined." See 19 U.S.C. § 1677f-1(c)(2).  Commerce did the latter, selecting Tafishco and Golden Quality because they accounted for the largest volume of exports of all exporters/producers subject to review.  See Selection of Respondents for Individual Review at 1–2, 7, PD 88, bar code 3446449-01 (Mar. 3, 2016).

[5] Commerce's practice is to send ADD questionnaires to the mandatory respondents selected. The questionnaires require the respondents to provide information about the organization and its accounting practices, sales of the merchandise under review, sales of the subject merchandise in the United States market, the organization's FOPs of subject merchandise sold in the United States, and about further manufacturing or assembly operations conducted in the United States prior to delivery to unaffiliated U.S. customers.  See, e.g., Initial Questionnaire to Tafishco at G-2, PD 90, bar code 3451250-01 (Mar. 22, 2016).

[6] Commerce uses FOPs to construct the value of the merchandise sold by the respondent in the U.S. market.  Specifically, Commerce uses the FOP inputs provided by respondents, along with an input value chosen from a surrogate country, to determine the normal value, i.e., the price at which the product is sold or offered for sale in the exporting country, of the subject merchandise sold by the respondent in the U.S. market.  See, e.g., Initial Questionnaire to Golden Quality at D-1, PD 89, bar code 3451246-01 (Mar. 22, 2016); see also 19 U.S.C. § 1677B(A)(1)(B). Generally, Commerce calculates the FOPs based on the best available information regarding the values of such factors in a market economy country considered economically comparable by Commerce.  See 19 U.S.C. § 1677b(c)(1)(B).

("CONNUM") specific basis.[7]  See, e.g., Initial Questionnaire to Golden Quality at D-2, PD 89, bar code 3451246-01 (Mar. 22, 2016).

On April 8, 2016, Tafishco submitted a letter to Commerce stating its intention not to participate in the review.  Tafishco Letter Declining Participation, PD 100, bar code 3457788-01 (Apr. 8, 2016).  On April 19, 2016, Golden Quality submitted a similar letter to Commerce stating its intention not to participate in the review.  Golden Quality Letter Declining Participation, PD 108, bar code 3460924-01 (Apr. 19, 2016).

On September 19, 2016, Commerce published its preliminary results and accompanying Preliminary Decision Memorandum.  See Certain Frozen Fish Fillets from [Vietnam], 81 Fed. Reg. 64,131 (Dep't Commerce Sept. 19, 2016) (preliminary results and partial rescission of the [ADD] administrative review; 2014–2015) ("Preliminary

_____

[7] "CONNUMs" are control-numbers created by Commerce and specific to the subject merchandise under review.  They are unique because they identify the key physical characteristics that are commercially meaningful to the U.S. market and have an impact on sale price and cost of production of the subject merchandise.  Commerce uses CONNUMs to distill the pertinent product characteristics down to a single number so that it can match the home market sales of that number with U.S. market sales of products with the same characteristics. Based on the comparison between the home market sales data and the U.S. market sales data, Commerce determines the dumping margin.  See Certain Frozen Fish Fillets from [Vietnam]: Issues and Decision Memorandum for the Final Results of the Eleventh [ADD] Administrative Review;  2013–2014  at  10,  A-552-801,  (Mar.  18,  2016),  available  at https://enforcement.trade.gov/frn/summary/vietnam/2016-07072-1.pdf (last visited Oct. 31, 2018) (citing e.g., Large Residential Washers from the People's Republic of China, 81 Fed. Reg. 1,398, 1,399 (Dep't Commerce Jan. 12, 2016) (initiation of less-than-fair-value investigation; see also Stainless Steel Sheet and Strip in Coils from Korea, 64 Fed. Reg. 30,664, 30, 679 (Dep't Commerce June 8, 1999) ("The cost test compares the price and cost of all comparison market sales, by model (identified by control number, or 'CONNUM.')"); Stainless Steel Wire Rod from Sweden, 73 Fed. Reg. 12,950 (Dep't Commerce Mar. 11, 2008) (final results of [ADD] review) and accompanying Issues and Decision Memorandum for the Final Results of the Administrative Review of Stainless Steel Wire Rod from Sweden at 2–14, A-401-806, (Mar. 5, 2008), available at  http://ia.ita.doc.gov/frn/summary/sweden/E8-4824-1.pdf  (last  visited  Oct.  31,  2018).   The control numbers are provided to respondents in the questionnaires issued by Commerce.  See, e.g., Initial Questionnaire to Golden Quality at D-2–D-11, PD 89, bar code 3451246-01 (Mar. 22, 2016).

Results") and accompanying Certain Frozen Fish Fillets from [Vietnam]: Decision

Memorandum for the Preliminary Results of the 2014-2015 [ADD] Administrative Review,

PD 222, bar code 3504073-01 (Sept. 6, 2016) ("Preliminary Decision Memo").  Commerce

preliminary assigned the Vietnam-wide rate[8] of $2.39 per kg to entries of subject

merchandise from Tafishco and Golden Quality, noting that both mandatory respondents

declined to respond to the ADD questionnaire, and therefore failed to demonstrate

eligibility for a separate rate.[9] See Preliminary Decision Memo at 10.  On March 27, 2017,

Commerce published its final results, in which it continued to assign the Vietnam-wide

---

[8] The current Vietnam-wide entity rate was established in the final results of the tenth administrative review.  See Certain Frozen Fish Fillets from [Vietnam], 80 Fed. Reg. 2,394, 2,396 (Dep't Commerce Jan. 16, 2015) (final results of [ADD] Administrative Review; 2012–2013). There, Commerce noted that the Vietnam-wide entity failed to cooperate to the best of its ability with the investigation, and thus it was appropriate to assign the Vietnam-wide entity a rate based on total adverse facts available ("AFA").  Id. at 2395.  Parties and Commerce sometimes use the shorthand "adverse facts available" or "AFA" to refer to Commerce's reliance on facts otherwise available with an adverse inference to reach a final determination.  However, AFA encompasses a two-part inquiry pursuant to which Commerce must first identify why it needs to rely on facts otherwise available, and second, explain how a party failed to cooperate to the best of its ability as to warrant the use of an adverse inference when "selecting among the facts otherwise available."  See 19 U.S.C. § 1677e(a)–(b); 19 C.F.R. § 351.308(a)–(c).

[9] For NME countries, Commerce employs a rebuttable presumption that all companies within an NME are subject to government control, and should therefore be assigned a single antidumping rate.  See Preliminary Decision Memo at 7.  Commerce considers Vietnam an NME country, and treated it as such for this review. See id. at 6.  Commerce's policy is to assign all exporters of the subject merchandise in the NME country a single rate, unless the exporter can prove its independence from the government.  See id. at 7; see also 19 C.F.R. § 351.107(d).  Here, Commerce found that both mandatory respondents failed to qualify for a separate rate because they opted not to participate in the review.  See Preliminary Decision Memo at 1; Final Decision Memo at 11.  Although Golden Quality submitted a separate-rate certification, Commerce found that Golden Quality's decision not to participate in the review precluded the granting of a separate rate, since Commerce announced in its initiation of the administrative review that for exporters who apply for separate-rate status and are selected as mandatory respondents, these exporters will only remain eligible for separate-rate status if they respond to all parts of the questionnaire. See Final Decision Memo at 14 (quoting Initiation of [ADD] and [CVD] Administrative Reviews, 80 Fed. Reg. 60,356, 60,358 (Dep't Commerce Oct. 6, 2015).

rate to both respondents, and determined that both respondents failed to demonstrate eligibility for a separate rate.  <u>See</u> Final Decision Memo at 11.

## JURISDICTION AND STANDARD OF REVIEW

The court exercises jurisdiction pursuant to section 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c) (2012), which grant the Court authority to review actions contesting the final determination in an administrative review of an antidumping duty order.  "The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I.  Commerce's Authority to Assign a Vietnam-wide Rate.

Tafishco challenges Commerce's statutory authority to impose a Vietnam-wide rate in this review.  <u>See</u> Tafishco Br. at 3–7.  Defendant argues that Tafishco did not raise this challenge in its complaint, and thus the court lacks jurisdiction to hear the claim.  <u>See</u> Def.'s Resp. Pls.' Mots. J. Agency R. at 9–10, Apr. 20, 2018, ECF No. 55 ("Def.'s Br.").  Defendant argues that, even if the court hears the claim, Commerce has authority to impose a country-wide rate that is neither an individual rate nor an all-others rate.  <u>See</u> Def.'s Supplemental Br. Resp. Ct.'s July 25, 2018 Order at 2, Aug. 30, 2018, ECF No. 67 ("Def.'s Supplemental Br.") (citing 19 C.F.R. § 351.107(d) and <u>Sigma Corp. v. United States</u>, 117 F.3d 1401, 1405–06 (Fed. Cir. 1997)).  For the reasons that follow, Commerce's asserted legal grounds for imposing a country-wide rate is remanded.

As a preliminary matter, the court may hear Tafishco's challenge to Commerce's statutory authority.[10]  In an action brought under 28 U.S.C § 1581(c), the complaint serves as a notice document.  As long as the complaint contains a reference to the relevant administrative determination, a statement of the issues presented, and a demand for judgment, the complaint provides Defendant with sufficient notice.  See USCIT R. 8, Practice Comment.  Here, Tafishco's complaint satisfies the Rule 8 requirements because it cites to Commerce's <u>Final Results</u>, it alleges that Commerce's application of adverse facts available ("AFA") and the rate applied were "not supported by substantial evidence" and "not in accordance with law," <u>see</u> Compl. at ¶ 19, and it contains a prayer for relief.  Further, Commerce can point to no prejudice because Tafishco raised—and Commerce addressed—the issue of Commerce's statutory authority in the administrative hearing below.  <u>See</u> Final Decision Memo at 9–12.  The court may therefore hear Tafishco's claim.

With respect to the merits of Tafishco's claim, 19 U.S.C § 1673d instructs that Commerce may establish two kinds of rates.  <u>See</u> 19 U.S.C § 1673d.  After a finding that subject merchandise is being sold at LTFV, Commerce must "determine the estimated weighted average dumping margin for each exporter and producer individually investigated," and "determine . . . the estimated all-others rate for all exporters and producers not individually investigated."  <u>See</u> 19 U.S.C § 1673d(c)(1)(B)(i)(I)–(ii).  The

---

[10] Defendant claims that Tafishco's failure to specifically articulate a challenge to Commerce's statutory authority to impose a country-wide NME rate in its complaint deprives this Court of jurisdiction.  <u>See</u> Def.'s Br. at 9–10.  Defendant's argument is best described as a waiver argument, not a jurisdictional argument, as Defendant argues that by not raising this specific argument in its complaint, Tafishco should be precluded from making the argument here.  As described above, however, Tafishco properly commenced this action, and adequately set forth the issues presented.  Defendant's waiver claim is therefore unpersuasive.

statute thus distinguishes between rates applied to individually investigated entities, and the all-others rate.[11]

Tafishco maintains that Commerce lacks statutory authority to impose a Vietnam-wide rate as it did in this review, because 19 U.S.C § 1673d only contemplates two types of rates. See Tafishco Br. at 3–7. Defendant contends that the Vietnam-wide rate assigned here was lawful because Commerce has authority to establish a third type of rate, an NME-wide or country wide rate, pursuant to from 19 C.F.R. § 351.107(d). See Def.'s Supplemental Br. at 2.

First, the court cannot agree with Tafishco that Commerce lacks authority to apply any NME-entity rate, because Commerce may apply a statutorily authorized rate to an NME entity.[12] As Defendant points out, Def.'s Br. at 13, this court and the Court of Appeals have affirmed the imposition of a single, NME entity-wide rate on numerous occasions. See Sigma Corp. v. United States, 117 F.3d 1401, 1405–06 (Fed. Cir. 1997); Transcom, Inc. v. United States, 294 F.3d 1371, 1381 (Fed. Cir. 2002); Michaels Stores, Inc. v. United States, 766 F.3d 1388, 1392 (Fed. Cir. 2014). Nonetheless, the court

---

[11] Although 19 U.S.C. § 1673d, on its face, applies only to investigations, the statute applies with equal force to administrative reviews. See Albemarle Corp. v. United States, 821 F.3d 1345, 1352 (Fed. Cir. 2016). The statutory framework requires that Commerce use the same methods for calculating dumping margins in administrative reviews as it does in initial investigations. See 19 U.S.C. § 1675(a) (In carrying out administrative reviews, Commerce must "determine the dumping margin" to calculate "the amount of any antidumping duty," exactly as it would in an investigation); see also id. at 1352. Also, despite the fact that the statute applies on its face only to market economy proceedings, Commerce has adopted it in NME proceedings as well. See id. at 1352, n.6. In this review, Commerce assigned "the Vietnam-wide rate" to Tafishco. Final Decision Memo at 11. As explained below, Defendant failed to ground this rate in statutory authority.

[12] Tafishco also argues that the Vietnam-wide rate cannot be an individually investigated rate because Commerce did not conduct a review of the Vietnam-wide NME entity. See Tafishco Br. at 5. Because Defendant asserts that the Vietnam-wide rate is not an individual rate or an all-others rate, Def.'s Supplemental Br. at 1, the court does not reach this issue.

cannot sustain Commerce's final determination as the Defendant here asserts that the Vietnam-wide rate is something other than one of the two statutorily authorized rates, i.e., it is not an individual rate or an all-others rate.   See Def.'s Supplemental Br. at 1 (explaining that Commerce does not treat the Vietnam-wide rate as an individual rate or as an "all-others" rate).   On the legal grounds provided by Defendant, Commerce's assignment of a Vietnam-wide rate to Tafishco cannot stand.

The regulation invoked by Defendant, 19 C.F.R. § 351.107(d), provides that in antidumping proceedings involving imports from an NME country, "'rates' may consist of a single dumping margin applicable to all exporters and producers."   See 19 C.F.R. § 351.107(d).   Under this regulation, Commerce may apply a single rate to all entities in an NME country.   For example, Commerce could establish an individual rate for the Vietnam entity and apply that rate to all entities that do not satisfy the criteria for a separate rate.   See, e.g., Certain Frozen Fish Fillets From [Vietnam], 80 Fed. Reg. 2,394, 2,396 (Dep't Commerce Jan. 16, 2015) (final results of [ADD] administrative review; 2012–2013) (determining, inter alia, the Vietnam-wide rate, which applied to several companies that failed to qualify for separate rates); see also Antidumping Proceedings: Announcement of Change in Department Practice for Respondent Selection in [ADD] Proceedings and Conditional Review of the [NME] Entity in NME [ADD] Proceedings, 78 Fed. Reg. 65,963, 65,964 (Dep't Commerce Nov. 4, 2013) (describing Commerce's practice with respect to reviewing the NME entity).   This court does not hold that Commerce lacks the power to assign a single dumping margin to all entities in an NME country, so long as that the rate assigned is one authorized by statute.

Yet, Defendant insists that Commerce did not establish an individual rate for the Vietnam entity here.   See Def.'s Supplemental Br. at 1.   Defendant asserts that Commerce established something called "a single country-wide rate," see Def.'s Br. at 12, a rate that is not an individual rate or an all-others rate.[13]  Def.'s Supplemental Br. at 1.   The regulation does not, however, grant Commerce authority to create a new kind of rate; Commerce may determine individual rates and an all-others rate.   See 19 U.S.C § 1673d(c)(1)(B)(i)(I)–(ii).  Defendant's interpretation of 19 C.F.R. § 351.107(d) is thus not based in the statute, and therefore contravenes the requirement that Commerce ground its conduct in statutory authority.  See, e.g., Nat'l Broadcasting Co. v. United States, 319 U.S. 190, 224 (1943) (explaining that the court's job is complete when it finds "that the action of the Commission was based upon findings supported by evidence, and was made pursuant to authority granted by Congress"); Chrysler Corp. v. Brown, 441 U.S. 281, 304 (1979) (explaining that in order for an agency's regulations to become law, "it is necessary to establish a nexus between the regulations and some delegation of the requisite legislative authority by Congress"); CS Wind Vietnam Co., Ltd. v. United States, 832 F.3d 1367, 1376 (Fed. Cir. 2016) (stating that in explaining its reasoning, Commerce "must reasonably tie the determination under review to the governing statutory standard

---

[13] Commerce, in its Final Decision Memo, describes the rate assigned to Tafishco as the "Vietnam-wide rate," Final Decision Memo at 11, and also refers to the "NME country rate," Final Decision Memo at 11, and the "NME-wide entity rate."  Final Decision Memo at 12.  Commerce could conceivably qualify these labels, and in particular, the "NME-wide entity rate" label, as an individual rate, and therefore ground the rate in 19 U.S.C § 1673d.  In response to the court's request for supplemental briefing, however, Defendant insisted that the rate assigned to Tafishco—however it is described—is not an individual rate or an all-others rate.  Def.'s Supplemental Br. at 1.

and to the record evidence by indicating what statutory interpretations the agency is adopting and what facts the agency is finding").

Further, the statute contains no grant of legislative authority for Commerce to promulgate regulations creating additional categories of rates. Congress has spoken to the precise statutory question. See Chevron, U.S.A., Inc. v. Nat. Resources Def. Council, Inc., 467 U.S. 837, 842–43 (1984) ("[i]f the intent of Congress is clear, that is the end of the matter . . . .").[14]   Accordingly, Defendant's asserted legal grounds for assigning Tafishco a Vietnam-wide rate in this case must fail.

Defendant-Intervenors argued in their responsive brief that the NME entity is an individual entity, and therefore the Vietnam-wide rate should be considered an individually investigated rate. See Defendant-Intervenors' Resp. Opp. Pls.' Rule 56.5 Mot. J. Agency R. at 8–9, Apr. 20, 2018, ECF No. 56 ("Def.-Intervenors' Br."). Had Defendant advanced

---

[14] Moreover, there is no statutory "gap" warranting deference. See Def.-Intervenors' Resp. Def.'s Supplemental Br. Resp. Ct.'s July 25, 2018 Order at 1–2, Sept. 5, 2018, ECF No. 68 ("Def.-Intervenors' Supplemental Br.") (citing Chevron U.S.A., Inc. v. Nat. Resources Def. Council, Inc., 467 U.S. 837, 843 (1984). Defendant-Intervenor invokes Michaels Stores, Inc. v. United States, 766 F.3d 1388 (Fed. Cir. 2014), for the proposition that the court has already found 19 U.S.C. § 1673d(c) to be ambiguous "when it comes to how Commerce should assign rates to [NME] entities." See Def.-Intervenors' Supplemental Br. at 2. Michaels Stores, however, is distinguishable. There, the court found an ambiguity in 19 C.F.R. § 351.107, specifically pertaining to whether the "noncombination rate" referred to in 19 C.F.R. § 351.107(b)(2) includes the NME-wide rate prescribed by § 351.107(d). See Michaels Stores, Inc. v. United States, 766 F.3d 1388, 1392 (Fed. Cir. 2014). 19 C.F.R. § 351.107(b)(2) provides that where subject merchandise is exported to the United States by a non-producing exporter, "if the Secretary has not established previously a combination cash deposit rate . . . for the exporter and producer in question or a noncombination rate for the exporter in question, the Secretary will apply the cash deposit rate established for the producer." The ambiguity therefore pertained to whether, for an exporter from an NME country, the "noncombination rate" referred to in subsection (b)(2) includes the NME-wide rate referred to in subsection (d). See 19 C.F.R. § 351.107(b)(2) and (d). The Michaels Stores analysis thus falls short of holding that the statute is unclear with respect to the two rates that Commerce has authority to determine pursuant to 19 U.S.C. § 1673d(c). Commerce must ground its conduct in the statute. See CS Wind Vietnam Co., 832 F.3d at 1377. Therefore, Defendant-Intervenors' argument is unpersuasive.

the same rationale, the court may have been able to sustain Commerce's determination. As described above, however, Defendant did not advance this position, and therefore it is not before the court.  Only Commerce may supply the legal grounds for its actions, and the court may not replace or supplement the agency's rationale with its own.  See, e.g., Sec. and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196 (1947) (explaining that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency"); Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 284–85 (1974) (explaining that a reviewing court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," but "may not supply a reasoned basis for the agency's action that the agency itself has not given"); Rovalma, S.A. v. Bohler-Edelstahl GmbH & Co. KG, 856 F.3d 1019, 1024 (Fed. Cir. 2017) (same).  Defendant expressly denies that the Vietnam-wide rate in this case is an individually investigated rate.  See Def.'s Supplemental Br. at 1.  The court may not, therefore, uphold Commerce's assignment of the Vietnam-wide rate to Tafishco on the basis that the Vietnam-wide rate is an individual rate.  That issue is not before the court.

Defendant argues that the line of cases upholding Commerce's practice of presuming state control of an exporter in an NME country authorizes Commerce to apply a country-wide rate in the manner it did here.  Def.'s Br. at 12 (citing Sigma Corp. v. United States, 117 F.3d 1401, 1405–06 (Fed. Cir. 1997); Transcom, Inc. v. United States, 294 F.3d 1371, 1373 (Fed. Cir. 2002); Michaels Stores, Inc. v. United States, 766 F.3d 1388,

1392 (Fed. Cir. 2014)).  This precedent is inapposite.[15]  In <u>Sigma</u>, the Court of Appeals

for the Federal Circuit held that Commerce had authority to employ a rebuttable

presumption of state control for exporters in an NME country, and that Commerce may

place the burden on such exporters to show a lack of government control.  <u>See</u> <u>Sigma</u>,

117 F.3d at 1405.  The question of whether Commerce may presume state control under

such circumstances, however, is distinct from the issue of whether Commerce has

statutory authority to impose a country-wide rate that is neither an individual rate nor an

all-others rate.  The plaintiff in <u>Sigma</u> did not challenge Commerce's statutory authority to

impose a country-wide rate as described, and accordingly, the Court did not address the

issue.  <u>See</u> <u>id.</u>

      Defendant-Intervenors argue that Commerce's assignment of the Vietnam-wide

rate was lawful because the courts have upheld Commerce's practice with respect to the

---

[15] Defendant cites <u>Transcom</u> and <u>Michaels Stores</u> for the same idea, i.e., that courts have upheld Commerce's practice of employing a rebuttable presumption of state control of exporters in an NME country, and that Commerce's imposition of the Vietnam-wide rate here is lawful under such precedent.  Neither case controls, however.  In <u>Transcom</u>, the court held that Commerce could employ a rebuttable presumption that exporters in an NME country are government-controlled, and where certain companies did not establish their independence from the state, Commerce could determine their rates using best information available ("facts otherwise available" under the current version of the state) pursuant to 19 U.S.C. § 1677e.  <u>See Transcom, Inc. v. United States</u>, 294 F.3d 1371, 1381 (Fed. Cir. 2002).  The court reasoned that the fact that the producer cooperated in Commerce's investigation was not dispositive because it did not impact the presumption in NME countries that producers are part of the NME entity until they show otherwise. <u>See id.</u> at 1381.  <u>Transcom</u> therefore did not address the issue of Commerce's assigning an NME-wide rate that is neither an individual rate nor an all-others rate.  In <u>Michaels Stores</u>, the court recognized that Commerce's policy is to assign a single rate to all exporters in NME countries unless the exporter can establish independence from the government.  <u>See Michaels Stores, Inc. v. United States</u>, 766 F.3d 1388, 1392 (Fed. Cir. 2014).  The issue in <u>Michaels Stores</u>, however, was whether, under 19 C.F.R. § 351.107(b)(2) and 19 C.F.R. § 351.107(d), a non-producing exporter could use its producers' dumping margins to import goods into the United States.  <u>See id.</u> at 1391.  <u>Michaels Stores</u> did not, therefore, address Commerce's authority to impose a country-wide rate that is neither an individual rate nor an all-others rate.

rebuttable presumption described above, and such rulings were based on a "direct analysis of the statute." [16]  See Def.-Intervenors' Br. at 7 (citing Diamond Sawblades Manufacturers Coalition v. United States, 866 F.3d 1304, 1311 (Fed. Cir. 2017) ("Diamond Sawblades")).   The Diamond Sawblades comparison misses the mark because, as in Sigma, there was no evidence that Commerce attempted to assign a country-wide rate that is neither an individual rate nor an all-others rate.  See Diamond Sawblades.   The issue in Diamond Sawblades was whether Commerce could lawfully assign an NME-wide rate where the rate was calculated using AFA and the respondent cooperated with the investigation.   See Diamond Sawblades, 866 F.3d at 1310.   The Court held that Commerce's assignment of the NME-wide rate was lawful, despite the fact that respondent's cooperation would typically foreclose the possibility of AFA.  Id. at 1312.   The court reasoned that such cooperation has no bearing on whether the respondent is under the control of its government.  Id. at 1312–13.  Where an exporter fails to rebut the presumption of state control, Commerce may assign an NME-wide rate. Nevertheless, Diamond Sawblades says nothing of Commerce's authority to assign an NME rate that is neither an individual rate nor an all-others rate, and therefore does not control here.

In its supplemental brief, Defendant argues that "[t]he presumption of government control and the [NME] rate are linked," seemingly arguing that together, the jurisprudence

---

[16] Although Defendant-Intervenors argued that the Vietnam-wide rate was an individual rate in their responsive brief, Defendant-Intervenors changed their argument in their supplemental brief, instead arguing, as Defendant did, that the Vietnam-wide rate is neither an individual rate nor an all-others rate.  See Def.-Intervenors' Br. at 6, 8; see also Def.-Intervenors' Supplemental Br. at 1–2.

described and 19 C.F.R. § 351.107(d) provide Commerce with the requisite authority to apply a Vietnam-wide rate in the manner it did here.  See Def.'s Supplemental Br. at 2–3.  First, this position ignores the statute.  Second, such an approach is unavailing, given that the case law relied upon addresses Commerce's rebuttable presumption of state control, rather than Commerce's statutory authority to issue a country-wide rate that is neither an individual rate nor an all-others rate.

Although it is true that Commerce "has broad authority to interpret the antidumping statute and devise procedures to carry out the statutory mandate," see Sigma, 117 F.3d at 1405, Commerce nonetheless must reasonably ground its actions in its statutory authority.  See CS Wind Vietnam Co., Ltd. v. United States, 832 F.3d 1367, 1377 (Fed. Cir. 2016) (explaining that an agency must ground its action in the statutory standard, and an agency's statement of what it usually does may not substitute for an explanation of why such action comports with the statute).  That courts have permitted Commerce to presume state control in an NME country does not address the problem of Commerce lacking statutory authority for a country-wide rate that is neither an individually investigated rate nor an all-others rate.  Although Defendant-Intervenors argued initially that the country-wide rate in this case was indeed an individual rate, Defendant expressly denied that the Vietnam-wide rate in this case is an individual rate.  See Def.-Intervenors' Br. at 8–9; see also Def.'s Supplemental Br. at 1.

## II.  Commerce's Assignment of the $2.39 Rate to Tafishco

Tafishco argues that Commerce was obligated to corroborate the Vietnam-wide rate of $2.39 per kg, and failed to do so.  See Tafishco Br. at 7–12; see also 19 U.S.C.

§ 1677e(c); 19 C.F.R. §§ 351.308(c) and (d).[17]   Tafishco argues that because the Vietnam-wide entity is still a party to this review, any adverse inference held against it must meet the AFA requirements generally.  See id. at 7.  Accordingly, Tafishco argues, Commerce was required to demonstrate that the Vietnam-wide rate was grounded "in commercial reality."  Id. at 8 (quoting Gallant Ocean (Thailand) Co., Ltd. v. United States, 602 F.3d 1319, 1324 (Fed. Cir. 2010).  Further, the Vietnam-wide rate is not based in commercial reality, Tafishco argues, because subsequently determined rates are lower, four review periods have passed since Commerce calculated the rate, the rate was based on different surrogate values, and it was calculated prior to Commerce requiring CONNUM–specific reporting.  See id. at 12–13.

Defendant counters that Commerce was not required to corroborate the rate because the Vietnam-wide entity was not subject to this review, since Commerce's practice is to review the NME entity in ADD administrative reviews only upon request.  Def.'s Br. at 18–19 (citing Antidumping Proceedings: Announcement of Change in Department Practice for Respondent Selection in [ADD] Proceedings and Conditional Review of the [NME] Entity in NME [ADD] Proceedings, 78 Fed. Reg. 65,963 (Dep't Commerce Nov. 4, 2013)).  Accordingly, Defendant argues, Commerce did not apply AFA to the Vietnam entity in this review, and therefore does not need to corroborate the rate.  Id.  Additionally, Defendant argues that under the Trade Preferences Extension Act of 2015, Commerce is not required to corroborate a dumping margin applied in a separate

---

[17] When Commerce relies on secondary information instead of information obtained in the current investigation or review, 19 U.S.C. § 1677e(c) requires that Commerce, "to the extent practicable, corroborate that information from independent sources" reasonably at its disposal.

segment of the proceeding, as was the case here.  Id. at 19–20; see also 19 U.S.C. §

1677e(c)(2).

In light of the above conclusion regarding Commerce's lack of statutory authority

to impose a country-wide rate that is neither an individual rate nor an all-others rate,

Commerce's assignment of the $2.39 Vietnam-wide rate to Tafishco is not in accordance

with law.   Pursuant to 19 U.S.C. § 1516a(b), the court must hold unlawful any

determination found "not in accordance with law."  See 19 U.S.C. § 1516a(b).  It is not

necessary to address the parties' arguments regarding corroboration, and the court

declines to do so.

### III. Commerce's Requirement That Golden Quality Report FOPs on a CONNUM-Specific Basis

Golden Quality argues that Commerce's requirement that respondents provide

CONNUM-specific FOP reporting is not supported by substantial evidence.  See Golden

Quality Br. at 7–20.  Golden Quality maintains that Commerce did not previously require

reporting of this kind, see Golden Quality Br. at 8–12, and that Commerce's decision to

require it for the twelfth administrative review was retroactive and not supported by

substantial evidence, since it contravenes Golden Quality's "reliance interest" developed

over the course of previous administrative reviews.  Id. at 14 (quoting Shikoku Chemicals

Corp. v. United States, 16 CIT 382, 386–87, 795 F. Supp. 417, 420 (1992)).  Defendant

counters that Commerce's request was not retroactive, and that Golden Quality had

sufficient notice that CONNUM-specific reporting would be required.  Def.'s Br. at 24.  For

the reasons that follow, Commerce's requirement that Golden Quality provide CONNUM-

specific FOP reporting is in accordance with law and supported by substantial evidence.

When Commerce conducts an ADD investigation, it must determine whether subject merchandise is being, or is likely to be, sold at less than fair value. See 19 U.S.C. § 1677b(a). The statute provides that in determining whether merchandise is being sold at less than fair value, "a fair comparison shall be made between the export price or constructed export price and normal value." Id. Commerce, in administering the antidumping statute, must determine what constitutes "normal value," i.e., the price at which the product is sold or offered for sale in the exporting country. See 19 U.S.C. § 1677b(a)(1)(B). Where the producer or exporter in question is from an NME country, and Commerce finds that available information does not permit an accurate determination of the merchandise's normal value, Commerce must determine normal value based on the FOPs utilized to produce the merchandise.[18] See 19 U.S.C. § 1677b(c); see also Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, Vol. 1, at 808–809. Commerce uses the respondents' CONNUM-specific FOPs "to construct the value of the product sold by [the respondent] company in the United States" to ensure that a fair comparison is made between the U.S. price and normal value. Certain Frozen Fish Fillets from [Vietnam], 81 Fed. Reg. 17,435 (Dep't Commerce Mar. 29, 2016) (final results of administrative review). It is, generally, standard procedure for Commerce to request product-specific data in antidumping investigations. See, e.g., Mukand, Ltd. v. Unied States, 767 F.3d 1300, 1307 (Fed. Cir. 2014).

---

[18] In addition to FOPs, Commerce must also include "an amount for general expenses and profit plus the cost of containers, coverings, and other expenses." 19 U.S.C. § 1677b(c)(1)(B).

Vietnam is an NME country.  Further, Golden Quality does not dispute that Commerce's practice generally is to request CONNUM-specific FOP reporting.  Rather, it argues that Commerce's decision to require such reporting here is unsupported by substantial evidence because Commerce failed "to consider the 'reliance interest' engendered by the decade's worth of proceedings under this AD order . . . ."  Golden Quality Br. at 17.

Golden Quality's argument is unpersuasive because Commerce put Golden Quality and other respondents on notice as early as the eighth administrative review of the ADD Order.  See Certain Frozen Fish Fillets from [Vietnam]: Issues and Decision Memorandum for the Final Results of the Eighth Administrative Review and Aligned New Shipper Reviews at 43–44, A-552-801, (Mar. 13, 2013), available at http://ia.ita.doc.gov/frn/summary/vietnam/2013-06550-1.pdf (last visited Oct. 31, 2018) (specifying that Commerce, in future reviews, "may require . . . respondents to report FOPs on a CONNUM-specific basis that will reflect the different production costs required to produce the different types of fish fillets, which may require respondents to maintain original accounting and production records on a monthly, product-specific basis.").  Commerce also provided Golden Quality and other respondents with notice of its intent to require CONNUM-specific reporting in the ninth administrative review, stating that, "[f]or all future reviews, the Department intends to require Vinh Hoan and other respondents to report [their] FOPs on a CONNUM-specific, product-specific . . . basis."  Certain Frozen Fish Fillets from [Vietnam], 79 Fed. Reg. 19,053 (Dep't Commerce Apr. 7, 2014) (final results of administrative review) and accompanying Certain Frozen Fish Fillets from

[Vietnam]: Issues and Decision Memorandum for the Final Results of the Ninth Administrative Review and Aligned New Shipper Review at 74, A-552-801, (Mar. 28, 2014), available at https://enforcement.trade.gov/frn/summary/vietnam/2014-07714-1.pdf (last visited Oct. 31, 2018).[19]   Golden Quality therefore had ample notice of the requirement that it report FOPs on a CONNUM-specific basis, and Commerce acted reasonably in requiring such reporting.

Golden Quality argues that Commerce unjustifiably changed its practice with respect to the CONNUM-specific reporting requirement.  Yet, Golden Quality proffers no evidence to undermine Defendant's position that Commerce has consistently requested this type of reporting in the past.  See Final Decision Memo at 14; see also Golden Quality Br.  Although Commerce excused respondents in the original investigation from reporting FOPs on a CONNUM-specific basis, Golden Quality cannot claim a reliance interest in such treatment because Commerce advised potential respondents in future reviews that reporting methodology would be closely scrutinized, and that any failure to distinguish between products would bring the risk of having AFA applied.  See Certain Frozen Fish Fillets from [Vietnam], 68 Fed. Reg. 37,116 (June 23, 2003) and accompanying Issues

---

[19] Commerce also provided notice in the eleventh administrative review, stating that although some parties had not submitted FOPs on a CONNUM-specific basis in the past, "the supplemental questionnaires serve as a notification that in this review and going forward, [FOPs] must be reported on a CONNUM-specific basis, or the respondent must then explain in detail why it is unable to do so and provide a reasonable allocation methodology."  See Certain Frozen Fish Fillets from Vietnam, 81 Fed. Reg. 17,435 (Dep't Commerce Mar. 29, 2016) (final results and partial rescission of [ADD] administrative review; 2013–2014) and accompanying Certain Frozen Fish Fillets from [Vietnam]: Issues and Decision Memorandum for the Final Results of the Eleventh [ADD] Administrative Review; 2013–2014 at 11, A-552-801, (Mar. 18, 2016), available at https://enforcement.trade.gov/frn/summary/vietnam/2016-07072-1.pdf (last visited Oct. 31, 2018).

and Decision Memorandum for the [ADD] Investigation of Certain Frozen Fish Fillets from [Vietnam] at 92, A-552-801, (June 23, 2003), available at https://enforcement.trade.gov/frn/summary/vietnam/03-15794-1.pdf (last visited Oct. 31, 2018). Golden Quality's argument that Commerce unjustifiably reversed its practice is therefore unpersuasive.

Finally, Golden Quality argues that by requiring CONNUM-specific reporting in the twelfth administrative review, Commerce is asking Golden Quality to provide information that does not exist, since the period of review had already passed when Commerce made its request. Golden Quality Br. at 18–19. Golden Quality maintains that such information does not exist because, in accordance with its reliance interest, no efforts were undertaken to collect this data or provide an explanation of efforts to report the FOPs by use of an alternate methodology.[20] Id. at 19–20. This argument fails. Golden Quality made a decision not to collect data in accordance with Commerce's chosen methodology, despite being notified multiple times of the requirement, and attempts to justify it by emphasizing its supposed reliance on the previous reporting practice. Golden Quality's argument that the information does not exist does not carry the day; the information does not exist because Golden Quality chose to ignore Commerce's notifications. Therefore,

---

[20] Golden Quality relies on Shikoku Chemicals Corp. v. United States, 16 CIT 382, 795 F. Supp. 417 (1992), for its reliance argument, a case Golden Quality describes as "strikingly similar" to this case. Golden Quality Br. at 14. Shikoku Chemicals is readily distinguishable. There, in an attempt to comply with the U.S. antidumping law, the plaintiffs adjusted their prices in accordance with the methodology consistently employed by Commerce. See id., 16 CIT at 386, 795 F. Supp. at 420. No such reliance occurred here. Indeed, despite being notified by Commerce of the requirement for CONNUM-specific FOP reporting, Golden Quality took no action to collect such information.

Consol. Court No. 17-00056                                                         Page 24

Commerce's requirement that Golden Quality provide CONNUM-specific FOP reporting
is supported by substantial evidence.

## CONCLUSION

Commerce's asserted legal grounds to issue the NME rate in this review and its
assignment of a $2.39 per kg rate to Tafishco are not in accordance with law.
Commerce's requirement that Golden Quality report its FOPs on a CONNUM-specific
basis is in accordance with law and supported by substantial evidence.  Therefore, it is

**ORDERED** that Commerce's asserted legal grounds to issue the NME rate in this
review is remanded; and it is further

**ORDERED** that Commerce's application of a $2.39 per kg rate on Tafishco is
remanded; and it is further

**ORDERED** that Commerce's requirement that Golden Quality report its FOPs on
a CONNUM-specific basis is sustained; and it is further

**ORDERED** that Commerce shall file its remand redetermination with the court
within 90 days of this date; and it is further

**ORDERED** that the parties shall have 30 days to file comments on the remand
redetermination; and it is further

**ORDERED** that the parties shall have 30 days to file their replies to comments on
the remand redetermination.

                                                   /s/ Claire R. Kelly
                                                  Claire R. Kelly, Judge


Dated: November 5, 2018
          New York, New York