Slip Op. 19-83

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **THUAN AN PRODUCTION TRADING AND SERVICE CO., LTD. and GOLDEN QUALITY SEAFOOD CORPORATION,** | |
| **Plaintiff and Consolidated Plaintiff,** | |
| **v.** | **Before: Claire R. Kelly, Judge** |
| **UNITED STATES,** | **Consol. Court No. 17-00056** |
| **Defendant.** | |
| **and** | |
| **CATFISH FARMERS OF AMERICA ET AL.,** | |
| **Defendant-Intervenors and Consolidated Defendant Intervenors.** | |

### OPINION

[Sustaining the U.S. Department of Commerce's redetermination.]

Dated: July 8, 2019

Matthew Jon McConkey, Mayer Brown LLP, of Washington, DC, for plaintiff Thuan An Production Trading and Service Co., Ltd.

Andrew Brehm Schroth, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of Hong Kong, S.A.R., and Jordan Charles Kahn, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of Washington, DC, for consolidated plaintiff Golden Quality Seafood Corporation.

Kara Marie Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant.  With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of Counsel was Kristen McCannon, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Jonathan M. Zielinski and James R. Cannon, Jr. of Cassidy Levy Kent (USA) LLP, of Washington, DC, for defendant-intervenors and consolidated defendant-intervenors Catfish Farmers of America; America's Catch; Alabama Catfish Inc.; Consolidated Catfish Companies LLC; Delta Pride Catfish, Inc.; Guidry's Catfish, Inc.; Heartland Catfish Company; Magnolia Processing, Inc.; Simmons Farm Raised Catfish, Inc.

Kelly, Judge: before the court is the U.S. Department of Commerce's ("Commerce" or "the Department") remand redetermination pursuant to the court's decision in Thuan An Production Trading and Service Co., Ltd. v. United States, 42 CIT __, 348 F. Supp. 3d 1340 (2018) ("Thuan An"). See Final Results of Redetermination Pursuant to Thuan An Production Trading and Service Co., Ltd. v. United States, Consol. Court No. 17-00056 (November 5, 2018), Apr. 1, 2019, ECF No. 74-1 ("Remand Results"). In Thuan An, the court remanded Commerce's assignment of the Vietnam-wide rate to Thuan An Production Trading and Service Co., Ltd. ("Tafishco") in the twelfth administrative review of the antidumping duty ("ADD") order covering certain frozen fish fillets from the Socialist Republic of Vietnam ("Vietnam"). See Thuan An, 42 CIT at __, 348 F. Supp. 3d at 1354–55; see also Certain Frozen Fish Fillets from [Vietnam], 82 Fed. Reg. 15,181 (Dep't Commerce Mar. 27, 2017) (final results and partial rescission of [ADD] administrative review; 2014–2015) ("Final Results") and accompanying Certain Frozen Fish Fillets from [Vietnam]: Issues and Decision Memorandum for the Final Results of the Twelfth [ADD] Administrative Review; 2014–2015, A-552-801, (Mar. 20, 2017), ECF No. 25-2 ("Final Decision Memo"). Specifically, although the court confirmed that "Commerce may apply a statutorily authorized rate" to a nonmarket economy ("NME") entity, the court rejected Commerce's application of something called "a single country-wide rate," Thuan An, 42 CIT at __, 348 F. Supp. 3d at 1348 (quoting Def.'s Resp. Pls.' Mots. J. Agency R. at 12,

Apr. 20, 2018, ECF No. 55), a rate that is not an individual rate or an all-others rate.  Id.,

42 CIT at __, 348 F. Supp. 3d at 1347 (citing Def.'s Supplemental Br. Resp. Ct.'s July 25,

2018 Order at 1, Aug. 30, 2018, ECF No. 67 ("Def.'s Supplemental Br.")).   The court

therefore found Commerce's asserted legal authority for the Vietnam-wide rate contrary

to law.  On remand, Commerce reconsidered its authority to impose an NME-entity rate

and "acknowledges that the NME-entity rate in the underlying investigation was an

individually investigated rate." Remand Results at 5.  Because Commerce complied with

the court's order in Thuan An and its determination is in accordance with law, the court

sustains Commerce's Remand Results.

## BACKGROUND

The court assumes familiarity with the facts of this case as set out in the previous

opinion ordering remand to Commerce and now recounts the facts relevant to the court's

review of the Remand Results.  See Thuan An, 42 CIT at __, 348 F. Supp. 3d at 1343–

45.  On March 27, 2017, Commerce published the final results of the twelfth administrative

review of the ADD order covering certain frozen fish fillets from Vietnam.  See Final

Results, 82 Fed. Reg. 15,181.   Commerce determined, inter alia, that mandatory

respondents Tafishco and Golden Quality Seafood Corporation ("Golden Quality") failed

to demonstrate eligibility for a separate rate,[1] and Commerce assigned both respondents

---

[1] For NME countries, Commerce employs a rebuttable presumption that all companies within the
NME are subject to government control and should therefore be assigned a single antidumping
rate.  See Certain Frozen Fish Fillets from [Vietnam], 81 Fed. Reg. 64,131 (Dep't Commerce
Sept. 19, 2016) (preliminary results and partial rescission of the [ADD] administrative review;

(footnote continued)

the Vietnam-wide rate of $2.39 per kg.[2]  Final Decision Memo at 11,15; see also Final

Results, 82. Fed. Reg. at 15,182.

Tafishco and Golden Quality commenced separate actions pursuant to section

516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii)

(2012)[3] before this court, which were later consolidated.  See Summons, Mar. 31, 2017,

ECF No. 1; Compl., Apr. 5, 2017, ECF 8; Order, July 26, 2017, ECF No. 28 (consolidating

---

2014–2015) ("Preliminary Results") and accompanying Certain Frozen Fish Fillets from [Vietnam]: Decision Memorandum for the Preliminary Results of the 2014–2015 [ADD] Administrative Review at 7, A-552-801, (Sept. 6, 2016), available at https://enforcement.trade.gov/frn/summary/vietnam/2016-22386-1.pdf (last visited July 2, 2019) ("Preliminary Decision Memo").  Commerce considers Vietnam an NME country, and treated it as such for this review. Preliminary Decision Memo at 6.  Commerce's policy is to assign all exporters of the subject merchandise in the NME country a single rate, unless the exporter can prove its independence from the government.  Id. at 7; see also 19 C.F.R. § 351.107(d). Here, Commerce found that Tafishco and Golden Quality failed to qualify for a separate rate because they opted not to participate in the review.  See Preliminary Decision Memo at 1; Final Decision Memo at 11.  Although Golden Quality submitted a separate-rate certification, Commerce found that Golden Quality's decision not to participate in the review precluded the granting of a separate rate.  See Final Decision Memo at 14 (quoting Initiation of Antidumping and Countervailing Duty Administrative Reviews, 80 Fed. Reg. 60,356, 60,358 (Dep't Commerce Oct. 6, 2015)).

[2]  The current Vietnam-wide entity rate was established in the final results of the tenth administrative review.  See Certain Frozen Fish Fillets from [Vietnam], 79 Fed. Reg. 40,059 (Dep't Commerce July 11, 2014) (preliminary results of the [ADD] administrative review; 2012–2013) and accompanying Certain Frozen Fish Fillets from [Vietnam]: Decision Mem. for the Prelim. Results of the 2012–2013 [ADD] Administrative Review at 8–12, A-552-801, (July 2, 2014), available at https://enforcement.trade.gov/frn/summary/vietnam/2014-16311-1.pdf (last visited July 2, 2019) ("AR10 Preliminary IDM") (unchanged in final determination).  There, Commerce found that the Vietnam-wide entity failed to cooperate to the best of its ability with the investigation and assigned the Vietnam-wide entity a rate based on total adverse facts available ("AFA").  AR10 Preliminary IDM at 8–11.  Parties and Commerce sometimes use the shorthand "adverse facts available" or "AFA" to refer to Commerce's reliance on facts otherwise available with an adverse inference to reach a final determination.  However, AFA encompasses a two-part inquiry pursuant to which Commerce must first identify why it needs to rely on facts otherwise available, and second, explain how a party failed to cooperate to the best of its ability as to warrant the use of an adverse inference when "selecting among the facts otherwise available."  See 19 U.S.C. § 1677e(a)–(b); 19 C.F.R. § 351.308(a)–(c).

[3]  Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

Court No. 17-00056, Court No. 17-00087, and Court No. 17-00088 under Court No. 17-00056).[4]   Tafishco argued, <u>inter alia</u>, that Commerce lacked statutory authority to issue the Vietnam-wide NME rate in the twelfth administrative review.   <u>See</u> Mem. Law Supp. Pl.[']s Rule 56.2 Mot. J. Agency R. at 3–7, Nov. 16, 2017, ECF No. 42 ("Tafishco's Br."). Tafishco contended that 19 U.S.C. § 1673d only contemplates two types of rates, and that the Vietnam-wide rate applied by Commerce was not a rate authorized by statute. <u>Id.</u>  Defendant, the United States, argued that the Vietnam-wide rate was lawful because Commerce has authority to establish a third type of rate, i.e., an NME-entity rate or country-wide rate, pursuant to 19 C.F.R. § 351.107(d),[5] and that Commerce does not view this country-wide rate as either an individual rate or an all-others rate.  <u>See</u> Def.'s Supplemental Br. at 2 (citing 19 C.F.R. § 351.107(d) and <u>Sigma Corp. v. United States</u>, 117 F.3d 1401, 1405–06 (Fed. Cir. 1997)); <u>see also</u> 19 U.S.C. § 1673d(c).

The court remanded the matter, holding that on the legal grounds proffered by the Department, Commerce's assignment of the Vietnam-wide rate to Tafishco was contrary to law.  <u>Thuan An</u>, 42 CIT at __, 348 F. Supp. 3d at 1347–51, 1354–55.  The court explained that because Commerce asserted that the Vietnam-wide rate applied was something other than one of the two statutorily authorized rates, Commerce's determination could not stand.  <u>Id.</u> at 1347.  The court specifically noted that its holding had no effect on Commerce's ability to assign a single dumping margin to all entities in

---

[4] Court No. 17-00087 was later severed and stayed.  <u>See</u> Memorandum and Order, Nov. 14, 2017, ECF No. 40.

[5] 19 C.F.R. § 351.107(d) pertains to "Rates in antidumping proceedings involving [NME] countries," and provides that "[i]n an antidumping proceeding involving imports from a [NME] country, 'rates' may consist of a single dumping margin applicable to all exporters and producers."

an NME country, so long as the rate assigned is one authorized by statute. <u>Id.</u> at 1347–

48.

On remand, Commerce maintains that it has statutory authority pursuant to 19

U.S.C. § 1675(a) to assign the Vietnam-wide rate to Tafishco in this review.  <u>Remand</u>

<u>Results</u> at 1.   Nonetheless, Commerce now "acknowledges that the NME-entity rate in

the underlying investigation was an individually investigated rate."  <u>Id.</u> at 5.   Further,

Commerce explains that the Vietnam-wide rate was set in the original antidumping

investigation using facts available with an adverse inference, that it was revised in the

tenth administrative review when Commerce reviewed the NME entity, and that it was this

rate that Commerce applied to Tafishco. <u>Id.</u>  at 5–6, 8.

## JURISDICTION AND STANDARD OF REVIEW

The court exercises jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28

U.S.C. § 1581(c) (2012), which grant the Court authority to review actions contesting the

final determination in an administrative review of an ADD order.   "The court shall hold

unlawful any determination, finding, or conclusion found . . . to be unsupported by

substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C.

§ 1516a(b)(1)(B)(i).   "The results of a redetermination pursuant to court remand are also

reviewed 'for compliance with the court's remand order.'"   <u>Xinjiamei Furniture</u>

<u>(Zhangzhou) Co. v. United States</u>, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014)

(quoting <u>Nakornthai Strip Mill Public Co. v. United States</u>, 32 CIT 1272, 1274, 587 F.

Supp. 2d 1303, 1306 (2008)).

## DISCUSSION

On remand, Commerce maintains that it has statutory authority to apply the Vietnam-wide rate to Tafishco.  Remand Results at 1–2.  Golden Quality argues that Commerce's remand redetermination does not comply with the court's instruction in Thuan An and should thus be remanded because Commerce acknowledges that the Vietnam-wide rate assigned in the twelfth administrative review "was neither an individual rate nor an all others rate," but rather "a rate calculated for the Vietnam-wide entity years ago in the tenth administrative review and carried forward" to the twelfth review.  Consol. Pl.'s Comments on Commerce's Remand Redetermination at 1–2, May 1, 2019, ECF No. 77 ("Golden Quality's Comments").  For the reasons that follow, Commerce's Remand Results comply with the court's order in Thuan An, are in accordance with law, and are thus sustained.

When Commerce makes a final determination that subject merchandise is being, or is likely to be, sold in the United States at less than its fair value, and the International Trade Commission finds that the domestic industry is being injured or threatened with injury as a result of the dumping, Commerce imposes an ADD.  See 19 U.S.C. § 1673d(c)(2).  Upon an affirmative determination of dumping, the statute requires that Commerce "determine the estimated weighted average dumping margin for each exporter or producer individually investigated," and determine an "estimated all-others rate for all exporters and producers not individually investigated."  19 U.S.C. § 1673d(c).  The statute thus contemplates two types of rates: rates for producers and exporters individually

investigated, and the all-others rate for producers and exporters not individually investigated.

Previously, Commerce had not "stated expressly under what provision . . . the NME entity-wide rate was authorized." Remand Results at 5; see also Final Decision Memo. Commerce's regulations provide that in ADD proceedings involving an NME country, "'rates' may consist of a single dumping margin applicable to all exporters and producers." 19 C.F.R. § 351.107(d). Commerce assigns all producers and exporters from the NME country a single rate, unless a company demonstrates its independence from the state. See Remand Results at 2; see also Sigma Corp. v. United States, 117 F.3d 1401, 1405–06 (Fed. Cir. 1997) (upholding Commerce's application of a rebuttable presumption of state control in NME proceedings).

In this case, when asked specifically by the court whether the rate was either an individually investigated rate or an all-others rate, Defendant answered that Commerce "does not treat the Vietnam-wide rate as an individual rate or as an 'all-others' rate." Def.'s Supplemental Br. at 1. The court explained in Thuan An that although Commerce "has broad authority to interpret the antidumping statute and devise procedures to carry out the statutory mandate," it must reasonably ground its actions in statutory authority. Thuan An, 42 CIT at __, 348 F. Supp. at 1351 (quoting Sigma Corp., 117 F.3d at 1405).

On remand, Commerce "acknowledges that the NME-entity rate in the underlying investigation was an individually investigated rate." Remand Results at 5. Commerce's explanation complies with the court's order in Thuan An. Characterizing the Vietnam-wide rate as an individually investigated rate reasonably grounds Commerce's

determination in statutory authority.  See 19 U.S.C. § 1673d(c).  The rate was originally

determined in the final determination of Commerce's less than fair value investigation,

during which Commerce "individually investigated" the Vietnam entity.[6]  See Certain

Frozen Fish Fillets from [Vietnam], 68 Fed. Reg. 37,116 (Dep't Commerce June 23, 2003)

(notice of final [ADD] determination of sales at less than fair value and affirmative critical

circumstances).  Commerce later revised the rate in the tenth administrative review after

reviewing the Vietnam entity.  See Certain Frozen Fish Fillets from [Vietnam], 80 Fed.

Reg. 2,394, 2,395 (Dep't Commerce Jan. 16, 2015) (final results of [ADD] administrative

review; 2012–2013).[7]

        Golden Quality argues that Commerce's explanation does not comply with the

court's remand instruction in Thuan An because the Vietnam-wide rate was neither an

individual rate nor an all-others rate in this review, but instead was calculated for the

Vietnam entity in a prior review and "carried forward."  Golden Quality's Comments at 1–

---

[6] Commerce determined the Vietnam-wide rate using facts available with an adverse inference.
See Certain Frozen Fish Fillets from [Vietnam], 68 Fed. Reg. 37,116, 37,120 (Dep't Commerce
June 23, 2003) (notice of final [ADD] determination of sales at less than fair value and affirmative
critical circumstances); see also 19 U.S.C. § 1677e.

[7] Under Commerce's former practice, Commerce would review the NME entity in any review
where an exporter seeking a separate rate was unable to demonstrate its independence from the
NME entity.  See, e.g., Certain Frozen Fish Fillets from [Vietnam], 79 Fed. Reg. 40,059 (Dep't
Commerce July 11, 2014) (preliminary results of the [ADD] administrative review; 2012–2013)
and accompanying Certain Frozen Fish Fillets from [Vietnam]: Decision Mem. for the Prelim.
Results of the 2012–2013 [ADD] Administrative Review at 8–12, A-552-801, (July 2, 2014),
available at https://enforcement.trade.gov/frn/summary/vietnam/2014-16311-1.pdf (last visited
July 2, 2019) (unchanged in final determination).  Commerce modified its practice on November
4, 2013, and now conducts an administrative review of the NME entity only where it receives a
request for review of that entity, or where Commerce elects to self-initiate such a review.  See
Antidumping Proceedings: Announcement of Change in Department Practice for Respondent
Selection in [ADD] Proceedings and Conditional Review of the Nonmarket Economy Entity in
NME [ADD] Proceedings, 78 Fed. Reg. 65,963, 65,970 (Dep't Commerce Nov. 4, 2013).

2.[8]   First, Golden Quality misconstrues the court's holding in Thuan An.   There, Commerce's determination could not be sustained because Commerce failed to reasonably ground its determination in statutory authority.   Thuan An, 42 CIT at __, 348 F. Supp. 3d at 1347.   Commerce viewed the rate as something other than the statutorily authorized individually investigated rate or the all-others rate.   Def.'s Supplemental Br. at 1.   On remand, Commerce acknowledges that the rate is an individually investigated rate, and Commerce's determination is therefore consistent with the authority granted by Congress.   Commerce thus complied with the court's remand instruction.

Second, to the extent Golden Quality argues that Commerce lacks statutory authority to apply an NME-entity rate in an administrative review where the rate was investigated in a prior review or in the original investigation, that argument misses the mark.[9]   Golden Quality points to no statute or regulation requiring Commerce to

---

[8] Golden Quality did not challenge the final determination on the grounds that the Vietnam-wide rate was not authorized by statute, nor did it incorporate Tafishco's arguments by reference. See Mem. Law Supp. Consol. Pl. [Golden Quality's] Mot. J. Agency R., Nov. 16, 2017, ECF No. 41 ("Golden Quality's Br."). Instead, Golden Quality challenged Commerce's determination regarding CONNUM-specific reporting. See Compl. at 5, Apr. 20, 2017, ECF No. 6 ([Golden Quality] v. United States, Court No. 17-00088); Golden Quality's Br. at 8–20. Tafischo did not submit any comments responding to the Remand Results, though Golden Quality did, commenting specifically on the issues raised initially by Tafishco. See Golden Quality's Comments at 1–3. Golden Quality argues that the rate Commerce applied is unlawful because Commerce failed to comply with the Court's order, and thus on remand Commerce should assign a new rate to Golden Quality. Id. at 3. Notwithstanding the fact that Tafishco argued that Commerce lacked statutory authority to assign the Vietnam-wide rate, Commerce addresses the merits of Golden Quality's comments on remand. See Remand Results at 11–14.

[9] In Thuan An, Tafishco argued that the Vietnam-wide rate could not be considered an individually investigated rate because "there was never a Department-led review of the Vietnam-wide NME entity, or any of its member companies." Tafishco's Br. at 5. First, to the extent Tafishco intended to argue that Commerce never reviewed the Vietnam entity in any segment of these proceedings,

investigate the NME entity in each administrative review, and Commerce "has broad authority to interpret the antidumping statute and devise procedures to carry out the statutory mandate."[10] <u>Sigma Corp.</u>, 117 F.3d at 1405.  Indeed, as Commerce explains, its current practice is to review the NME entity only when it receives a request to do so, or when it chooses to self-initiate such a review.  <u>Remand Results</u> at 3 n.10 (citing <u>Antidumping Proceedings: Announcement of Change in Department Practice for Respondent Selection in [ADD] Proceedings and Conditional Review of the Nonmarket Economy Entity in NME [ADD] Proceedings</u>, 78 Fed. Reg. 65,963, 65,970 (Dep't Commerce Nov. 4, 2013)).  In this review, Commerce received no request to review the Vietnam entity, and thus the Vietnam-wide rate adopted in the tenth review remained in

---

that assertion is untrue.  Commerce examined the Vietnam entity in the original investigation, <u>see Certain Frozen Fish Fillets from [Vietnam]</u>, 68 Fed. Reg. 37,116, 37,120 (Dep't Commerce June 23, 2003) (notice of final [ADD] determination of sales at less than fair value and affirmative critical circumstances), and again in the tenth administrative review.  <u>See Certain Frozen Fish Fillets from [Vietnam]</u>, 80 Fed. Reg. 2,394, 2,395 (Dep't Commerce Jan. 16, 2015) (final results of [ADD] administrative review; 2012–2013).  Second, to the extent Tafishco intended to argue that Commerce was required by law to review the Vietnam entity in this review in order to assign the Vietnam-wide rate to Tafishco, Tafishco points to no statute or regulation imposing such a requirement.  <u>See</u> Tafishco's Br. at 5.

[10] Golden Quality cites the court's language in <u>Thuan An</u> stating that although 19 U.S.C. § 1673d applies on its face to investigations, the statute "applies with equal force to administrative reviews."  Golden Quality's Comments at 3 (quoting <u>Thuan An</u>, 348 F. Supp. 3d at 1347 n.11).  Golden Quality apparently construes this language to require that a rate be investigated in the current review if it is to be considered "individually investigated."  <u>See</u> 19 U.S.C. § 1673d(c)(1)(B)(i)(I).  The statute, however, does not contain such a requirement, nor was the court's language meant to impose such a requirement on Commerce.  The language in question simply acknowledges that Congress contemplated two types of rates in antidumping investigations, and the statute does not grant Commerce authority to create a new kind of rate in administrative reviews.

effect.  Because Tafishco failed to demonstrate its independence from the government,

Commerce lawfully applied the Vietnam-wide rate to Tafishco.[11]

Finally, Tafishco argues that Commerce's assignment of a $2.39 per kg rate to

Tafishco is unsupported by substantial evidence because Commerce was obligated to

"corroborate the Vietnam-wide rate according to 'its reliability and relevance to the

countrywide entity as a whole.'"[12]  Tafishco's Br. at 7 (quoting Peer Bearing Co. v. United

States, 32 CIT 1307, 1313, 587 F. Supp. 2d 1319, 1327 (2008)); see also 19 U.S.C.

§ 1677e(c).[13]   However, Commerce is not required to corroborate rates applied in a

previous segment of the same proceeding.  See 19 U.S.C. § 1677e(c)(2) (Commerce

"shall not be required to corroborate any dumping margin or countervailing duty applied

in a separate segment of the same proceeding").[14]  Here, Commerce determined the rate

---

[11] Tafishco argued in Thuan An that the Vietnam-wide rate cannot be based on "facts available" or "adverse inferences" because 19 U.S.C. § 1677e only applies to the "applicable determinations" listed in the statute, i.e., determinations of individually investigated rates and all-others rates.  Tafishco's Br. at 6; see also 19 U.S.C. § 1673d(c).  Tafishco's argument is unavailing, given Commerce's characterization of the Vietnam-wide rate as an individually investigated rate.  Commerce's determination thus falls squarely within the "applicable determinations" referenced by the statute.  See 19 U.S.C. § 1677e.

[12] Tafishco did not participate in the redetermination.  Tafishco made its corroboration argument when it challenged the final determination in Thuan An.  See Tafishco's Br. at 7–12.  The court did not reach the argument in Thuan An, 42 CIT __, 348 F. Supp. 3d 1340, but reaches it now.

[13] When Commerce makes a determination using facts available with an adverse inference, the statute imposes a corroboration requirement.  See 19 U.S.C. § 1677e(c).  Specifically, section 1677e(c) provides that when Commerce "relies on secondary information rather than on information obtained in the course of an investigation or review," Commerce "shall, to the extent practicable, corroborate that information from independence sources that are reasonably at their disposal."

[14] Commerce in the Final Decision Memo invokes 19 U.S.C. § 1677e(c)(2), as recently amended by the Trade Preferences Extension Act of 2015 ("TPEA"), in support of its determination that it need not corroborate the NME rate.  Final Decision Memo at 15–16.  Commerce is correct that

(footnote continued)

applied to Tafishco in the eighth administrative review based on data reported by a respondent, and subsequently applied this rate to the Vietnam entity by application of facts available with an adverse inference in the tenth administrative review.  See Certain Frozen Fish Fillets from [Vietnam], 79 Fed. Reg. 40,059 (Dep't Commerce July 11, 2014) (preliminary results of the [ADD] administrative review; 2012–2013) and accompanying Certain Frozen Fish Fillets from [Vietnam]: Decision Mem. for the Prelim. Results of the 2012–2013 [ADD] Administrative Review at 8–12, A-552-801, (July 2, 2014), available at https://enforcement.trade.gov/frn/summary/vietnam/2014-16311-1.pdf (last visited July 2, 2019) (unchanged in final determination).  Commerce thus applied the rate in a separate segment of these proceedings and was therefore under no obligation to corroborate.

---

TPEA provides that rates established in a prior segment of a proceeding need not be corroborated.  See 19 U.S.C. § 1677e(c)(2).  Defendant-Intervenor argues that Commerce was not required to corroborate the Vietnam-wide rate because Commerce made no finding of AFA in this review, and therefore even without TPEA there is no requirement of corroboration. Def.-Intervenors' Resp. Opp'n Pls.' Rule 56.2 Mots. J. Agency R. at 9–11, Apr. 20, 2018, ECF No. 56.  As a result of Commerce's change in practice, it no longer conditionally reviews an NME entity; rather, it only reviews the NME entity if it receives a request to do so or elects to conduct a review on its own accord.  See Antidumping Proceedings: Announcement of Change in Department Practice for Respondent Selection in [ADD] Proceedings and Conditional Review of the Nonmarket Economy Entity in NME [ADD] Proceedings, 78 Fed. Reg. 65,963, 65,970 (Dep't Commerce Nov. 4, 2013).  Here, there was no request to review the NME entity.  Commerce assigned respondents the Vietnam-wide rate because they failed to establish eligibility for a separate rate. Final Decision at 11, 15–16.  Because Commerce did not review the Vietnam-wide entity, there could be no finding of facts available or adverse inferences, and therefore Commerce had no need to corroborate.  19 U.S.C. § 1677e(c)(1).  Regardless of the effect of Commerce's change in practice with respect to reviewing the NME entity, Commerce is correct that section 1677e(c)(2) as amended relieves Commerce of the obligation to corroborate any rate established in a prior segment of the same proceeding.

## CONCLUSION

For the reasons discussed, Commerce's <u>Remand Results</u> comply with the court's order in <u>Thuan An</u>, 42 CIT at __, 348 F. Supp. 3d at 1354–55, and are in accordance with law.   Therefore, Commerce's <u>Remand Results</u> are sustained, and judgment will enter accordingly.


                            <u>/s/ Claire R. Kelly</u>
                            Claire R. Kelly, Judge


Dated:July 8, 2019
       New York, New York